UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SCOTTY D. LAWSON, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| vs. ) | No. 1:14-cv-01851-JMS-MJD |
| ) | |
| CAROLYN W. COLVIN Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| *Defendant*. ) | |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Scotty D. Lawson applied for disability, disability insurance benefits, and supplemental security income (collectively, "disability benefits") from the Social Security Administration ("SSA") on July 14, 2011, alleging a disability onset date of December 1, 2009. [Filing No. 8-5 at 4.] His application was denied initially on January 17, 2012, [Filing No. 8-4 at 2], and upon reconsideration on May 18, 2012, [Filing No. 8-4 at 14]. Administrative Law Judge Joseph L. Brinkley (the "ALJ") held a video hearing on March 5, 2014 and issued an opinion concluding that Mr. Lawson was not disabled as defined by the Social Security Act (the "Act") on July 26, 2014. [Filing No. 8-2 at 29-39.] The Appeals Council denied Mr. Lawson's request for review on September 8, 2014, [Filing No. 8-2 at 2], making the ALJ's decision the Commissioner's "final decision" subject to judicial review. Mr. Lawson filed this civil action pursuant to 42 U.S.C. § 405(g), asking this Court to review his denial of benefits. [Filing No. 1.]

**I.**
**BACKGROUND**

Mr. Lawson was forty-eight years old at the time he applied for disability benefits, alleging a disability onset date of December 1, 2009. [Filing No. 8-5 at 4.] Mr. Lawson has a tenth-grade education, [Filing No. 8-6 at 7], and stopped working in September 2009, [Filing No. 8-5 at 7].

1

Mr. Lawson previously worked as a carpenter and a furnace operator. [Filing No. 8-6 at 8.] Mr. Lawson cites the combined effects of hardening of arteries, anxiety, depression, and heart problems in support of his disability and inability to maintain work.[1] [Filing No. 8-6 at 7.]

Using the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4), the ALJ concluded that Mr. Lawson is not disabled. [Filing No. 8-2 at 29.] The ALJ found as follows:

- At Step One of the analysis, the ALJ found that Mr. Lawson meets the insured status requirements of the Act and has not engaged in substantial gainful activity since his alleged onset date. [Filing No. 8-2 at 30.]

- At Step Two of the analysis, the ALJ found that Mr. Lawson has the following severe impairments: "coronary artery disease; status-post stent placement; and adjustment disorder (with anxiety/depression)." [Filing No. 8-2 at 3.]

- At Step Three of the analysis, the ALJ found that Mr. Lawson did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 8-2 at 31.] The ALJ reached this conclusion after considering various listings. [Filing No. 8-2 at 31-32.]

- The ALJ concluded that through the date of last insured, Mr. Lawson had the residual functional capacity ("RFC") to perform light work with the following limitations:

  > [T]he claimant: can occasionally lift/carry no more than twenty pounds and frequently lift/carry no more than ten pounds; can occasionally climb ramps/stairs, balance, kneel, and stoop; can never crawl, crouch, or climb ladders, ropes, or scaffolds; should avoid concentrated exposure to humidity, odors, poor ventilation, gases, dusts, wetness, vibrations, extreme

---

[1] Both parties provided a detailed description of Mr. Lawson's medical history and treatment in their briefs. [Filing No. 10 at 3-6; Filing No. 15 at 1-5.] Because this implicates sensitive and otherwise confidential medical information, the Court incorporates these facts by reference herein and details specific facts as necessary to address the parties' arguments.

> hot or cold temperatures, and workplace hazards including unprotected heights, dangerous machinery, and uneven terrain; is limited to unskilled, simple, routine, repetitive tasks; is limited to occasional superficial contact with general public and work that does not require production quotas and assembly lines.

[Filing No. 8-2 at 33.]

- At Step Four of the analysis, the ALJ found that Mr. Lawson was able to perform past relevant work as a picker/packer as he actually performed the position. [Filing No. 8-2 at 37.] The ALJ did not reach Step Five of the analysis.

- Based on these findings, the ALJ concluded that Mr. Lawson is not disabled as defined by the Act and, thus, is not entitled to the requested disability benefits. [Filing No. 8-2 at 39.]

Mr. Lawson requested that the Appeals Council review the ALJ's decision, but that request was denied on September 8, 2014, [Filing No. 8-2 at 2], making the ALJ's decision the Commissioner's "final decision" subject to judicial review. Mr. Lawson filed this civil action pursuant to 42 U.S.C. § 405(g), asking this Court to review his denial of benefits. [Filing No. 1.]

## II.
## STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits and Supplemental Security Income to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last . . . not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for

the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotation omitted).

The ALJ must apply the five-step sequential inquiry set forth in 20 C.F.R. § 404.1520(a)(4) to determine:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform his past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps on, two, and three, he will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then he must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's RFC by evaluating all limitations that arise from medically determinable impairments, even those that are not severe. *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ may not dismiss a line of evidence contrary to the ruling. *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e), (g). The

4

burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

### III.
#### DISCUSSION

Mr. Lawson raises two issues on appeal that he contends require reversal of the ALJ's decision: First, Mr. Lawson argues that the ALJ failed to build a logical bridge between the evidence that Mr. Lawson had poor tolerance for walking and the ALJ's conclusion that Mr. Lawson could perform light work with no walking restriction. [Filing No. 10 at 11-14.] Second, Mr. Lawson contends that the ALJ impermissibly "played doctor" by rejecting the conclusion of a consultative examiner. [Filing No. 10 at 15.] The Court will address each of Mr. Lawson's argument in turn.

**A. Walking Restriction**

Mr. Lawson argues that the ALJ failed to address evidence supporting a walking restriction in the function-by-function assessment of the RFC finding, in violation of Social Security Ruling 96-8p. [Filing No. 10 at 11-14.] Mr. Lawson points to his poor performance on a treadmill stress test and contends that the ALJ failed to explain how that evidence is consistent with the ALJ's conclusion that Mr. Lawson can perform light work with no walking restriction. [Filing No. 10 at 11-14.]

5

The Commissioner responds by pointing out that the ALJ addressed the treadmill stress test results in his decision. [Filing No. 15 at 8-9.] The Commissioner disputes Mr. Lawson's interpretation of the results and points to the conclusion of consultative examiner Dr. Sands, who found that Mr. Lawson could perform light work and stand or walk about 6 hours in an 8-hour workday. [Filing No. 15 at 8-9 (citing Filing No. 8-7 at 84).] The Commissioner also identifies evidence in the record that she believes indicates that Mr. Lawson would not require a restriction on walking. [Filing No. 15 at 9.]

Mr. Lawson replies that the Commissioner's arguments are not viewed in the proper context and are a prohibited *post hoc* rationalization for the ALJ's decision. [Filing No. 16 at 1-2.]

Social Security Ruling 96-8p provides that the RFC assessment "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." While this assessment "need not discuss every piece of evidence in the record, [the ALJ] must confront the evidence that does not support his conclusion and explain why it was rejected." *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004) (finding error where ALJ failed to address evidence of recurring headaches); *see Liggins v. Colvin*, 593 F. App'x 564, 568 (7th Cir. 2015) (finding error where ALJ failed to address evidence that supported sitting limitations); *see also Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009) (finding error in ALJ's "cursory analysis" of evidence of impairments). Furthermore, the ALJ "cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010).

The Social Security Administration places a job in the light work category when, among other things "it requires a good deal of walking or standing." 20 C.F.R. § 404.1567(b); *see also*

6

*Haynes v. Barnhart*, 416 F.3d 621, 627 (7th Cir. 2005) ("A job may also be considered light work if it requires 'standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday' with intermittent sitting.") (citing SSR 83-10, 1983 WL 31251, at *5-6). "To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b).

On January 10, 2012, Mr. Lawson underwent a treadmill stress test to "evaluate the condition of [his] heart and circulation." [Filing No. 8-7 at 46-48.] Mr. Lawson felt shortness of breath within two minutes and had chest pain within four minutes. [Filing No. 8-7 at 48.] His chest pain intensified at five minutes and the test was terminated shortly thereafter, approximately two minutes after the speed increased to 2.5 miles per hour. [Filing No. 8-7 at 46; Filing No. 8-7 at 48.] The doctor administering the test concluded that Mr. Lawson showed "poor exercise tolerance" and became "markedly short of breath." [Filing No. 8-7 at 47.]

In his decision, the ALJ summarizes the treadmill stress test as follows: Mr. Lawson "developed some shortness of breath and some chest pain, but he was able to achieve a heart rate of eighty-five percent and afterwards fully recovered from the chest pain and shortness of breath and was released without complaints." [Filing No. 8-2 at 36.] The ALJ's decision states that it accounts for these results by including certain restrictions in Mr. Lawson's RFC, none of which involve a walking restriction. [Filing No. 8-2 at 36.]

The Court agrees with Mr. Lawson that the ALJ's decision fails to build a logical bridge from the results of the stress test to the ALJ's conclusion that Mr. Lawson can perform light work with no walking restriction. Specifically, the ALJ does not explain how Mr. Lawson could perform light work requiring him walking or standing for up to six hours per eight-hour workday, given

7

the evidence that the treadmill stress test had to be terminated after approximately five minutes because of Mr. Lawson's shortness of breath and intensifying chest pain.

The Commissioner's attempts to rehabilitate the ALJ's decision for reasons not identified by the ALJ are *post hoc* rationalizations that violate the well-established *Chenery* doctrine. *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) (emphasizing that *Chenery* forbids the Commissioner from defending the ALJ's decision on ground that were not embraced by the ALJ) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943)). For example, the Commissioner points out that consultative examiner Dr. Sands did not include a walking restriction for Mr. Lawson in his report. [Filing No. 15 at 8-9 (citing Filing No. 8-7 at 84) (Dr. Sands' report opining that Mr. Lawson could stand and/or walk for a total of about 6 hours in an 8-hour workday).] The Commissioner ignores, however, that the ALJ did not cite Dr. Sands' report in his conclusions regarding limitations from the treadmill stress test and, in fact, later in the decision "only afford[ed] some weight" to Dr. Sands' opinion. [Filing No. 8-2 at 36 (citing Filing No. 8-7 (Exhibit 9F)).] The Commissioner also relies on evidence that the day before the stress test, Mr. Lawson saw a doctor and reported that he had "no further chest pain and much improved angina." [Filing No. 15 at 9.] Not only does the Commissioner ignore that the ALJ did not cite this evidence in the context of the stress test, [Filing No. 8-2 at 36], but it is unclear to the Court how Mr. Lawson's self-reported condition while not engaged in physical activity undermines the results of the treadmill stress test.

For these reasons, the Court concludes that the ALJ committed reversible error by not building a logical bridge from evidence contrary to his determination that Mr. Lawson's RFC need not include a walking restriction.[2]

### B. Opinion from Consultative Examiner

Mr. Lawson also argues that the ALJ impermissibly played doctor in giving the opinion of consultative examiner Dr. Rhee only "some weight" for basing her opinion upon Mr. Lawson's subjective allegations. [Filing No. 10 at 15.] Mr. Lawson contends that Dr. Rhee's opinion was actually based upon a physical examination and the doctor's knowledge of cardiovascular health, not just on Mr. Lawson's subjective allegations. [Filing No. 10 at 15.]

The Commissioner responds that the ALJ was entitled to give less weight to Dr. Rhee's opinion because it was unclear, tentative, and based upon Mr. Lawson's subjective complaints. [Filing No. 15 at 10.] The Commissioner also argues that Dr. Rhee's opinion about the type of work Mr. Lawson could perform does not warrant deference because the doctor was not a vocational expert. [Filing No. 15 at 10.]

An ALJ may not "substitute[ his] own judgment for that of a medical professional." *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001). Instead, an ALJ considers many factors in deciding the weight to give any medical opinion. 20 C.F.R. § 404.1527(c). One of those factors is the "supportability" of the opinion, which includes, among other things, that "[t]he better an

---

[2] Mr. Lawson also suggests that it was error for the ALJ to omit "limitations on reaching, pushing, pulling, and handling." [Filing No. 10 at 14.] Because Mr. Lawson does not develop this argument or cite evidence in support of that proposed limitation, the Court not further address his cursory assertion. *Cadenhead v. Astrue*, 410 F. App'x 982, 984 (7th Cir. 2011) ("A generalized assertion of error is not sufficient to challenge an adverse ruling, and undeveloped or unsupported contentions are waived.").

explanation a source provides for an opinion, the more weight [the ALJ] will give that opinion."
20 C.F.R. § 404.1527(c)(3).

It does not appear that the ALJ erred by concluding that the opinion of consultative examiner Dr. Rhee was only entitled to "some weight." [Filing No. 8-2 at 35.] The ALJ did not completely reject Dr. Rhee's opinion and, instead, explained that he was only affording it some weight because it appeared that the opinion was primarily based on Mr. Lawson's subjective complaints. [Filing No. 8-2 at 35 (citing Filing No. 8-7 at 39-41).] Although Mr. Lawson fails to convincingly explain why this conclusion was error, should he further develop it on remand, the ALJ should take care to sufficiently address any arguments raised.

### C. Step Four Finding

Finally, although Mr. Lawson does not raise this issue on appeal, the Court is compelled to point out the inconsistency between the ALJ's finding at Step Four that Mr. Lawson was able to perform his past relevant work as "actually performed, not as performed in the national economy," [Filing No. 8-2 at 38], and Mr. Lawson's undisputed testimony that he was terminated from his prior job because he was "unable to keep up" with production demands, [Filing No. 8-2 at 63]. It does not appear that the ALJ found that Mr. Lawson's condition had improved since his termination, such that he could perform his prior work. *See Nolen v. Sullivan*, 939 F.2d 516, 519 (7th Cir. 1991) ("To determine whether [a claimant] is physically capable of returning to her former work, the administrative law judge obviously must ascertain the demands of that work in relation to the claimant's present physical capacities.") (quotation omitted). If the ALJ again finds on remand at Step 4 that Mr. Lawson can perform his past relevant work as actually performed, the ALJ should explain that finding in light of Mr. Lawson's undisputed testimony that he was terminated for being unable to keep up with production demands of that job.

10

# V.
## CONCLUSION

For the reasons detailed herein, the Court **VACATES** the ALJ's decision denying Mr. Lawson benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence four). Final judgment will issue accordingly.

Date: September 14, 2015

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Electronic Distribution via CM/ECF:**

Charles D. Hankey
charleshankey@hankeylawoffice.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov